IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs November 17, 2015


**DWAYNE WILLIAMS v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Shelby County**
**No. 1000816     Lee V. Coffee, Judge**

_____

**No. W2014-02415-CCA-R3-PC  -  Filed February 3, 2016**
_____

Petitioner, Dwayne Williams, pleaded guilty to aggravated sexual battery and was
sentenced to eight years in confinement.  Petitioner filed the instant petition for post-
conviction relief, and following an evidentiary hearing, the post-conviction court denied
relief.  On appeal, petitioner argues that: (1) his guilty plea was not knowingly and
voluntarily entered; (2) he received ineffective assistance of counsel when counsel failed
to file a motion to suppress and failed to investigate a potential plea offer; and (3) he was
denied a full and fair hearing on his ineffective assistance of counsel claims against his
first counsel.  After our review of the parties' briefs, the record, and the applicable law,
we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROGER A. PAGE, J., delivered the opinion of the Court, in which JOHN EVERETT
WILLIAMS and ROBERT H. MONTGOMERY, JR., JJ., joined.

Gregory David Allen (on appeal) and Charles S. Mitchell (at post-conviction hearing),
Memphis, Tennessee, for the Appellant, Dwayne Williams.

Herbert H. Slatery III, Attorney General and Reporter; Jeffrey D. Zentner, Assistant
Attorney General; Amy P. Weirich, District Attorney General; and Kenya N. Smith,
Assistant District Attorney General, for the Appellee, State of Tennessee.


**OPINION**

I. Facts from Guilty Plea Hearing

Petitioner was indicted on one count of aggravated sexual battery on February 4, 2010. On October 3, 2012, petitioner entered an *Alford*[1] plea to the charged offense with an agreed-upon sentence of eight years. The facts underlying the plea, as explained by the State, were as follows:

> [O]n or about May 17th of 2008, law enforcement officers responded to a criminal assault call to a home here in Shelby County where the mother of the nine-year-old female victim in this case indicated that she had come home in the middle of the night from a club and found her young daughter in a dark bedroom with the [petitioner] and what appeared to be semen on the [petitioner's] clothing; that her daughter disclosed to her that the [petitioner] had penetrated her; that it was not the first time it had happened; that he had choked her; and that usually he was drinking when this happened.
>
> The police transported the young girl to the Memphis Sexual Assault Resource Center. She did have injuries consistent with her disclosure.

During the plea colloquy, petitioner stated that he had an eighth grade education, had not earned his G.E.D., and could read "pretty good." Petitioner affirmed that trial counsel had explained his constitutional rights, acknowledged that he had a right to a trial, and asserted that he did not want to proceed to trial. Petitioner told the trial court that he had no complaints with trial counsel and that trial counsel had discussed with him the State's proof against him. Petitioner also agreed that trial counsel had obtained all of the technical data concerning DNA analysis for him. The trial court accepted the agreed-upon plea agreement and found appellant guilty of aggravated sexual battery, sentencing appellant to the agreed-upon eight years in confinement.

## II. Facts from Post-Conviction Hearing

On May 30, 2013, petitioner filed a petition for post-conviction relief, which was later amended. The post-conviction court held a hearing on September 19, 2014.

At the hearing, petitioner initially expressed displeasure with his first counsel; however, the post-conviction court limited the scope of evidence presented to petitioner's trial counsel, stating that petitioner's first counsel was not the attorney of record when petitioner entered his guilty plea. Petitioner testified that he understood that he had pleaded guilty to aggravated sexual battery, a Class B felony. Petitioner agreed that prior

---

[1] *North Carolina v. Alford*, 400 U.S. 25 (1970) (holding that a defendant can plead guilty to an offense while still asserting innocence to the crime).

to submitting his guilty plea, he had pleaded guilty to ten separate felonies. Petitioner agreed that trial counsel provided him with the discovery in his case and that he had the opportunity to review it. Petitioner acknowledged that trial counsel informed him that some of the DNA testing had come back with inconclusive results, although petitioner asserted that he did not understand the meaning of "inconclusive." Petitioner stated that trial counsel communicated with him when he had court hearings but that she did not visit him in jail. Petitioner explained that trial counsel did not tell him that he had to plead guilty but told him that it was in his best interest to plead guilty; however, petitioner asserted that he "didn't believe nothing[sic] [trial counsel] said." Petitioner agreed that trial counsel explained that he would have to serve one hundred percent of his sentence and that he would be subject to community supervision for life. Petitioner also acknowledged that there was a note in his file that the State was going to indict him for rape of a child rather than aggravated sexual battery. He conceded that during the guilty plea submission hearing, he told the trial court that he wanted to plead guilty.

Petitioner explained that he did not want a trial in his case but that he wanted to court evaluate whether he was "denied the right to accept or reject that simple assault plea bargain that may have been on the table." However, petitioner denied ever receiving any paperwork that such a plea bargain was offered. After the court explained the consequences of granting the petition, petitioner asserted that he wanted a fair trial because he was innocent.

During cross-examination, petitioner explained that from the beginning of his case, he wanted a trial, even though he indicated otherwise during his plea colloquy. Petitioner agreed that he pleaded guilty because under the circumstances, he believed that it was in his best interest to do so. However, petitioner then asserted that he had to follow his attorney's advice and that it was not his decision whether to plead guilty. In response to numerous questions targeted at petitioner's thoughts and concerns when pleading guilty, petitioner repeatedly asserted that he "took [his] attorney's advice" in pleading guilty. Petitioner explained that he decided to challenge his guilty plea after reviewing the guilty plea transcript and discovering the meaning of "inconclusive." However, petitioner stated that he did not ask trial counsel for the definition of "inconclusive." Petitioner agreed that at the guilty plea submission hearing, he testified under oath that he was satisfied with trial counsel's representation.

During re-direct examination, petitioner showed the court a Tennessee Bureau of Investigation report that stated that petitioner's DNA matched DNA found on the bed sheets at the scene of the crime; however, petitioner asserted that this information would not have harmed his case had he proceeded to trial. Petitioner also asserted that trial counsel never informed him that it was his decision whether to plead guilty.

-3-

In response to questions from the court, petitioner asserted that trial counsel misled him regarding the results from the DNA testing, telling him that the results were inconclusive, which caused him to enter a guilty plea. Petitioner stated that the only thing he asked trial counsel to do before entering his guilty plea was to file a motion to suppress the bed sheets and the victim's underwear from the crime scene, which she did not do.

Trial counsel testified that when she began representing petitioner, she conferred with petitioner's first counsel and reviewed all the information she received with petitioner. Trial counsel explained that she refused to file a motion to suppress the bed sheets because there was no legal basis for the motion. Trial counsel stated that petitioner had expressed dissatisfaction with his first counsel; however, when she reviewed petitioner's case, she found that the first counsel had "done pretty much everything that needed to be done." Trial counsel explained that when she received the case, it was ready to be tried and that the case's second scheduled trial date was May 21, 2012; however, due to petitioner's request for new counsel, she was appointed on May 22, 2012, and the trial date was delayed. When trial counsel discussed the case with first counsel, first counsel told her that she had received plea offers of fourteen years and twelve years. Petitioner also told her that he had filed a "bar complaint" against his first counsel. Trial counsel explained that the suppression issue was "all that mattered to [petitioner] at the time." Trial counsel asserted that petitioner was also "very loud" about receiving discovery and that, as a result, she provided him with an "extensive amount of repetitive discovery." Regarding the DNA results, trial counsel explained that the bed sheets had tested positive for petitioner's DNA, which was normal given that petitioner was sleeping in the bed during that time, but that the DNA testing from the victim's underwear was inconclusive. Trial counsel asserted that she explained these results to petitioner and that she normally tried to explain DNA results using plain language. Trial counsel explained that it was the inconclusive DNA results that allowed her to negotiate for the plea agreement that petitioner ultimately accepted.

Trial counsel testified that she had numerous conversations with the prosecutor and with petitioner when negotiating for a better plea offer. During these conversations, trial counsel explained petitioner's right to a trial and the consequences of an *Alford* plea. Prior to the eight-year-sentence plea offer, petitioner had been offered fourteen-year and twelve-year sentences. Trial counsel explained that the prosecutors had asserted that if petitioner proceeded to trial, petitioner could be reindicted for rape of a child. Trial counsel testified that after reviewing all of the information, petitioner determined that it was in his best interest to plead guilty and that while she recommended accepting the plea, she did not tell petitioner that he had to plead guilty.

During cross-examination, trial counsel testified that she worked primarily in criminal defense and that she had been practicing law for fourteen years. Trial counsel

explained that she had tried jury trials in the past. Regarding the DNA analysis, trial counsel said that she did not use the words "conclusive" or "inconclusive" when explaining the DNA results with petitioner because "that's a big word" and she tried to "minimize potential confusion." Trial counsel explained that when she first began representing petitioner, the bed sheets from the crime scene had been lost, which was why DNA analysis had not been performed. However, after the sheets were found, a DNA analysis was performed and the DNA matched petitioner's DNA, which she asserted was "no surprise to [her] because he was the one sleeping in those bed sheets." Trial counsel explained that it was the victim's underwear that had yielded inconclusive DNA results. Trial counsel testified that petitioner had told her that a misdemeanor assault offer had been made but that when she investigated the issue, "there was no evidence of that." She also testified that she explained the ramifications of the negotiated guilty plea and his potential sentence exposure if he proceeded to trial. However, trial counsel asserted that she did not force petitioner to accept the plea offer.

In response from questions from the court, trial counsel explained that the only things that petitioner asked her to do were to file a motion to suppress and to negotiate for a more beneficial plea offer. She asserted that petitioner had pleaded guilty because that was how he wanted to proceed.

After considering the testimony and evidence presented, the post-conviction court denied the petition. The post-conviction court found that trial counsel had provided satisfactory representation and that petitioner had intelligently and knowingly entered his guilty plea. The post-conviction court concluded that trial counsel had made a tactical decision that a motion to suppress would be frivolous. The post-conviction court recalled "scrupulously" explaining petitioner's rights to him during his plea colloquy and also considered petitioner's assertions during his plea colloquy that he was satisfied with trial counsel's representation and that if he requested trial counsel to do anything further, she would have done so. The post-conviction court found that trial counsel "competently, thoroughly, [and] exhaustively investigated this case" and that she "performed all her duties that Tennessee law" required. The post-conviction court stated that the aggravated sexual battery plea was the twelfth felony to which petitioner had pleaded guilty and that if he had proceeded to trial, he could have received a sentence of life without the possibility of parole or thirty to sixty years to be served at one hundred percent. The post-conviction court said, "I see absolutely nothing on the record that would indicate that [trial counsel] did not represent [petitioner] effectively. In fact, she did a great job for [petitioner]." The post-conviction court noted the inconsistencies between petitioner's testimony at the guilty plea submission hearing and his post-conviction hearing. The court discredited petitioner's testimony, stating, "I find that his credibility is non-existent." The court accredited trial counsel's testimony that petitioner was never offered a plea to assault and found that there was no evidence that such an offer was ever made. The post-conviction court asserted that petitioner should be "thrilled" with trial

counsel's representation because she negotiated for and obtained an eight-year sentence even though petitioner's sentence exposure was considerably higher. Petitioner now appeals the denial of his petition.

## III. Analysis

Petitioner argues that his guilty plea was not knowingly and voluntarily entered. He also alleges that he received ineffective assistance of counsel when trial counsel failed to file a motion to suppress and failed to investigate a potential plea offer. Finally, petitioner argues that he was denied a full and fair hearing on his ineffective assistance of counsel claims because the post-conviction court refused to allow him to present testimony regarding his first counsel. The State responds that petitioner's guilty plea was submitted knowingly and voluntarily and that he did not receive ineffective assistance of counsel.

## A. Standard of Review

To obtain relief in a post-conviction proceeding, a petitioner must demonstrate that his or her "conviction or sentence is void or voidable because of the abridgement of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." Tenn. Code Ann. § 40-30-103. A post-conviction petitioner bears the burden of proving his or her factual allegations by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f). "'Evidence is clear and convincing when there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence.'" *Lane v. State*, 316 S.W.3d 555, 562 (Tenn. 2010) (quoting *Grindstaff v. State*, 297 S.W.3d 208, 216 (Tenn. 2009)).

Appellate courts do not reassess the post-conviction court's determination of the credibility of witnesses. *Dellinger v. State*, 279 S.W.3d 282, 292 (Tenn. 2009) (citing *R.D.S. v. State*, 245 S.W.3d 356, 362 (Tenn. 2008)). Assessing the credibility of witnesses is a matter entrusted to the post-conviction judge as the trier of fact. *R.D.S.*, 245 S.W.3d at 362 (quoting *State v. Odom*, 928 S.W.2d 18, 23 (Tenn. 1996)). The post-conviction court's findings of fact are conclusive on appeal unless the preponderance of the evidence is otherwise. *Berry v. State*, 366 S.W.3d 160, 169 (Tenn. Crim. App. 2011) (citing *Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn. 1997); *Bates v. State*, 973 S.W.2d 615, 631 (Tenn. Crim. App.1997)). However, conclusions of law receive no presumption of correctness on appeal. *Id.* (citing *Fields v. State*, 40 S.W.3d 450, 453 (Tenn. 2001)). As a mixed question of law and fact, this court's review of petitioner's ineffective assistance of counsel claims is de novo with no presumption of correctness. *Felts v. State*, 354 S.W.3d 266, 276 (Tenn. 2011) (citations omitted).

## B. Guilty Plea

A guilty plea must be entered knowingly, voluntarily, and intelligently. *Lane*, 316 S.W.3d at 562; *see North Carolina v. Alford*, 400 U.S. 25, 31 (1970); *Boykin v. Alabama*, 395 U.S. 238, 242-44 (1969). If a plea is not knowingly, voluntarily, and intelligently entered, the guilty plea is void because appellant has been denied due process. *Lane*, 316 S.W.3d at 562 (citing *Boykin*, 395 U.S. at 243 n.5). To make such a determination, the court must examine "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *Id.* Courts should consider the following factors when ascertaining the validity of a guilty plea:

> (1) the defendant's relative intelligence; (2) the defendant's familiarity with criminal proceedings; (3) the competency of counsel and the defendant's opportunity to confer with counsel about alternatives; (4) the advice of counsel and the court about the charges and the penalty to be imposed; and (5) the defendant's reasons for pleading guilty, including the desire to avoid a greater penalty in a jury trial.

*Id.* (quoting *Howell v. State*, 185 S.W.3d 319, 330-31 (Tenn. 2006)). "[A] plea is not voluntary if it results from '[i]gnorance, incomprehension, coercion, terror, inducements, [or] subtle or blatant threats.'" *Id.* at 563 (quoting *Blankenship v. State*, 858 S.W.2d 897, 904 (Tenn. 1993)). Thus, the transcript of the plea colloquy must affirmatively show that a defendant's decision to plead guilty was both voluntary and knowledgeable. *Id.* The trial court must ensure that the defendant entered a knowing and intelligent plea by thoroughly "'canvass[ing] the matter with the accused to make sure that he has a full understanding of what the plea connotes and of its consequences.'" *Id.* (quoting *Blankenship*, 858 S.W.2d at 904). This court has stated:

> [U]nder *Boykin v. Alabama* . . . , a guilty plea must be voluntarily, understandingly, and intelligently entered in order to withstand [a] constitutional challenge. *Boykin* requires at minimum that a criminal defendant be warned of his constitutional rights to trial by jury, to confrontation, and to protection against self-incrimination, in order to establish affirmatively that his plea was voluntary and intelligent.

*State v. Miller*, 634 S.W.2d 615, 618 (Tenn. Crim. App. 1981).

Petitioner does not contest that the trial court properly conducted his guilty plea submission hearing but, rather, states that his plea was involuntary because he believed that the decision whether to plead belonged to his attorney and because trial counsel improperly explained the DNA results from items at the crime scene.

Initially, considering the factors for a valid guilty plea, we note that petitioner had an eighth grade education, did not have his G.E.D., and could read "pretty good." The record also shows that petitioner had previously pleaded guilty to multiple felony charges. The post-conviction court also found that trial counsel "competently, thoroughly, [and] exhaustively investigated this case." Furthermore, trial counsel testified that she explained petitioner's right to a trial and the consequences of an *Alford* plea. Trial counsel also explained that prior to the eight-year-sentence plea offer, petitioner had been offered fourteen-year and twelve-year sentences. The post-conviction court elaborated that if petitioner had proceeded to trial, he could have received a sentence of life without the possibility of parole or thirty to sixty years to be served at one hundred percent. Therefore, petitioner avoided a much higher sentence exposure by accepting the eight-year sentence as part of his current plea agreement.

Regarding petitioner's assertion that he was unaware it was his decision whether to enter a plea, trial counsel specifically testified that while she recommended accepting the plea, she did not tell petitioner that he had to plead guilty or force him to plead guilty. Trial counsel asserted that petitioner determined that it was in his best interest to plead guilty and that he pleaded guilty because that is how he wanted to proceed. The record also shows that petitioner had previously pleaded guilty to multiple felony charges.

Regarding petitioner's assertion that trial counsel failed to adequately explain the DNA results, trial counsel explained that the bed sheets had tested positive for petitioner's DNA, which was normal given that petitioner was sleeping in the bed during that time, but that the DNA testing from the victim's underwear was inconclusive. Trial counsel asserted that she explained these results to petitioner. Furthermore, in response to petitioner's assertion that he did not understand the term "inconclusive," trial counsel testified that she normally tries to explain DNA results using plain language and that she would not have used the term "inconclusive" when explaining the DNA results with petitioner because "that's a big word."

Ultimately, the post-conviction court found that petitioner's credibility was "non-existent," especially given that petitioner's testimony at the post-conviction hearing belied his testimony at the guilty plea submission hearing. "A petitioner's testimony at a guilty plea hearing 'constitute[s] a formidable barrier' in any subsequent collateral proceeding because '[s]olemn declarations in open court carry a strong presumption of verity.'" *Bruce S. Rishton v. State*, No. E2010-02050-CCA-R3-PC, 2012 WL 1825704, at *17 (Tenn. Crim. App. May 21, 2012) (quoting *Blackledge v. Allison*, 431 U.S. 63, 74 (1977)). In sum,

> [t]he evidence does not preponderate against the findings of the post-
> conviction court. It appears the petitioner is suffering from a classic case of
> 'Buyer's Remorse,' in that he is no longer satisfied with the plea for which

he bargained. A plea, once knowingly and voluntarily entered, is not subject to obliteration under such circumstances.

*Robert L. Freeman v. State*, No. M2000-00904-CCA-R3-PC, 2002 WL 970439, at \*2 (Tenn. Crim. App. May 10, 2002). Based on the record and the credibility determinations of the post-conviction court, petitioner has failed to prove that his guilty plea was not entered knowingly, voluntarily, and intelligently due to errors by trial counsel.

## C. Ineffective Assistance of Counsel

Petitioner also argues multiple instances of ineffective assistance of counsel. The Sixth Amendment to the United States Constitution, made applicable to the states through the Fourteenth Amendment, and article I, section 9 of the Tennessee Constitution require that a criminal defendant receive effective assistance of counsel. *Cauthern v. State*, 145 S.W.3d 571, 598 (Tenn. Crim. App. 2004) (citing *Baxter v. Rose*, 523 S.W.2d 930 (Tenn. 1975)). When a petitioner claims that he received ineffective assistance of counsel, he must demonstrate both that his lawyer's performance was deficient and that the deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Finch v. State*, 226 S.W.3d 307, 315 (Tenn. 2007) (citation omitted). It follows that if this court holds that either prong is not met, we are not compelled to consider the other prong. *Carpenter v. State*, 126 S.W.3d 879, 886 (Tenn. 2004).

To prove that counsel's performance was deficient, petitioner must establish that his attorney's conduct fell below an objective standard of "'reasonableness under prevailing professional norms.'" *Finch*, 226 S.W.3d at 315 (quoting *Vaughn v. State*, 202 S.W.3d 106, 116 (Tenn. 2006)). As our supreme court held:

> "[T]he assistance of counsel required under the Sixth Amendment is counsel reasonably likely to render and rendering reasonably effective assistance. It is a violation of this standard for defense counsel to deprive a criminal defendant of a substantial defense by his own ineffectiveness or incompetence. . . . Defense counsel must perform at least as well as a lawyer with ordinary training and skill in the criminal law and must conscientiously protect his client's interest, undeflected by conflicting considerations."

*Id.* at 315-16 (quoting *Baxter*, 523 S.W.2d at 934-35). On appellate review of trial counsel's performance, this court "must make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's conduct, and to evaluate the conduct from the perspective of counsel at that time." *Howell v. State*, 185 S.W.3d 319, 326 (Tenn. 2006) (citing *Strickland*, 466 U.S. at 689).

To prove that petitioner suffered prejudice as a result of counsel's deficient performance, he "must establish a reasonable probability that but for counsel's errors the result of the proceeding would have been different." *Vaughn*, 202 S.W.3d at 116 (citing *Strickland*, 466 U.S. at 694). "A 'reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Id.* (quoting *Strickland*, 466 U.S. at 694). As such, petitioner must establish that his attorney's deficient performance was of such magnitude that he was deprived of a fair trial and that the reliability of the outcome was called into question. *Finch*, 226 S.W.3d at 316 (citing *State v. Burns*, 6 S.W.3d 453, 463 (Tenn. 1999)).

## 1. Trial counsel

Although petitioner made multiple assertions that trial counsel failed to explain the term "inconclusive" and that trial counsel failed to explain that it was his decision whether to plead guilty when arguing that his guilty plea was involuntary and unknowingly entered, petitioner seems to only argue that trial counsel provided ineffective assistance of counsel in failing to file a motion to suppress and in failing to investigate a plea offer to simple assault. To the extent that petitioner intended to also claim that trial counsel was ineffective in her communication with him prior to the entry of his guilty plea, for the reasons stated *supra* section C, we conclude that petitioner has failed to prove that trial counsel was ineffective.

Regarding petitioner's argument that trial counsel was ineffective for failing to file a motion to suppress the bed sheets from the crime scene, we conclude that the post-conviction court properly denied petitioner relief. The post-conviction court found that trial counsel had made a tactical decision that a motion to suppress would be frivolous. Trial counsel testified that she refused to file the motion because there were no legal grounds to support a motion to suppress. It is well-established law that appellate courts will not "'second guess strategic and tactical choices made by trial counsel.'" *Hellard v. State*, 629 S.W.2d 4, 9 (Tenn. 1982) (citation omitted). Our supreme court has stated, "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Felts v. State*, 354 S.W.3d 266, 277 (Tenn. 2011). As to whether trial counsel performed adequate investigation, the post-conviction court found that trial counsel "competently, thoroughly, [and] exhaustively investigated this case" and that she "performed all her duties that Tennessee law" required. Trial counsel testified that she received discovery from first counsel, that she reviewed the DNA analysis results, had numerous conversations with the prosecutor about petitioner's case, and provided petitioner with an "extensive amount of repetitive discovery." Therefore, the post-conviction court correctly concluded that trial counsel's investigation was sufficient. Furthermore, we conclude that petitioner has failed to prove that even if the bed sheets had been suppressed, he would not have pleaded guilty, which

would establish prejudice. In fact, trial counsel testified that the DNA match to the bed sheets was not compelling evidence because they were retrieved from a bed on which petitioner slept; therefore, his DNA was expected to be present on the bed sheets. Petitioner has failed to show that trial counsel was deficient or that he suffered any type of prejudice, and the post-conviction court properly denied relief. Petitioner is not entitled to relief on this issue.

Regarding petitioner's claim that trial counsel was ineffective for failing to investigate the plea offer for simple assault, we conclude that petitioner has failed to show deficiency. Trial counsel testified that after petitioner informed her of the possible plea offer, she investigated the issue but found no evidence that such an offer existed. The post-conviction court credited trial counsel's testimony, and, as stated above, appellate courts do not reassess the post-conviction court's determination of the credibility of witnesses. *See Dellinger*, 279 S.W.3d at 292 (citation omitted). Petitioner has failed to show that trial counsel was deficient in her investigation of the alleged assault plea offer. He is not entitled to relief on this issue.

## 2. First Counsel

Petitioner also alleges that he was denied a full and fair hearing when the post-conviction court refused to allow petitioner to present evidence of his first counsel's ineffective assistance. In his petition for post-conviction relief, petitioner asserted numerous allegations of ineffective assistance of counsel against his first counsel. In addition, at the post-conviction hearing, petitioner complained about the performance of his first counsel; however, the post-conviction court limited the scope of evidence presented to petitioner's trial counsel, stating that petitioner's first counsel was not the attorney of record when petitioner entered his guilty plea.

We find no authority supporting the post-conviction court's determination that petitioner was barred from presenting evidence against his first counsel merely because the attorney was not representing petitioner at the time that petitioner submitted his guilty plea. To the contrary, our supreme court has reviewed the performance of counsel even though the attorney was not the attorney of record at trial. *Sepulveda v. State*, 90 S.W.3d 633, 638-40 (Tenn. 2002) (reviewing a pretrial counsel's representation even though the attorney had been removed from the case before petitioner's trial commenced); *see also Forrester v. State*, No. M2002-01942-CCA-R3-PC, 2003 WL 22038779, at *7-8 (Tenn. Crim. App. Sept. 2, 2003) (reviewing a prior attorney's representation for ineffective assistance of counsel).

However, we conclude that even if the post-conviction court had allowed petitioner to present evidence on these claims, petitioner would have been unable to prove his claims. On appeal, petitioner makes three allegations of ineffective assistance

-11-

of counsel against his first counsel.  He argues that first counsel was ineffective for: (1) rejecting a plea offer for misdemeanor assault; (2) failing to file a motion to suppress; and (3) failing to investigate a speedy trial violation.

Regarding the alleged plea offer for misdemeanor assault, trial counsel said that she investigated whether this offer was made before she began representing petitioner. However, she found no evidence of such an offer.  Furthermore, trial counsel explained that when she discussed the case with first counsel, first counsel told her that she had received plea offers of fourteen years and twelve years.  The court accredited trial counsel's testimony that petitioner was never offered a plea to assault and found that there was no evidence that such an offer was ever made.  Based on all of this information, petitioner would be unable to show he was prejudiced in any way.

Regarding first counsel's failure to file a motion to suppress, this is the same allegation that petitioner asserted against trial counsel.  For the same reasons stated above, we conclude that petitioner's claims against first counsel are meritless and that he has failed to show prejudice. *See supra section C1.*

Finally, after considering the merits of petitioner's claim and the trial court's credibility finding, we conclude that petitioner's assertion that first counsel was ineffective for failing to investigate a speedy trial claim is meritless.  The balancing test used to analyze a speedy trial violation requires consideration of (1) the length of the delay, (2) the reasons for the delay, (3) a defendant's assertion of the right to a speedy trial, and (4) whether the accused suffered any prejudice from the delay.  *State v. Simmons*, 54 S.W.3d 755, 759-60 (Tenn. 2001).  Petitioner was indicted on February 4, 2010, and he pleaded guilty on October 3, 2012; therefore, because the delay was over one year, a speedy trial analysis is warranted.  *Id*. at 759 ("Generally, post-accusation delay must approach one year to trigger a speedy trial inquiry.").  However, we note that due to the nature of the charges against petitioner, several items had to undergo DNA analysis.  Furthermore, during the delay, petitioner requested and received new counsel, who had to familiarize herself with the case and conduct an independent investigation. Trial counsel explained that when she received the case, it was ready to be tried and that the case's second scheduled trial date was May 21, 2012; however, due to petitioner's request for new counsel, she was appointed on May 22, 2012, and the trial was rescheduled.  Therefore, we conclude that the delay was not due to the negligence of the State.  Lastly, we conclude that petitioner has failed to show that he was prejudiced by any delay in prosecution or by trial counsel's failure to assert a speedy trial violation.  We note that even if petitioner requested that first counsel assert a speedy trial claim, he does not assert a similar claim against trial counsel.  In fact, trial counsel explained that the suppression issue was "all that mattered to [petitioner] at the time."  Therefore, if petitioner was unconcerned with a speedy trial violation during the four and a half months that trial counsel represented him, he cannot show that there was a reasonable

probability that but for first counsel's failure to investigate and file the motion he would not have pleaded guilty. As the post-conviction court stated, petitioner received a very beneficial plea agreement in light of the charges against him and his sentencing exposure. In fact, the post-conviction court asserted that petitioner should be "thrilled" with his eight-year sentence because his sentence exposure was considerably higher. Based on the foregoing analysis, petitioner is not entitled to relief.

## CONCLUSION

Based on the parties' briefs, the record, and the applicable law, we affirm the judgment of the post-conviction court.

_____
ROGER A. PAGE, JUDGE